[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action of dissolution of marriage was tried over three days. Both parties were represented by counsel. Both parties and several other witnesses testified at the trial. They presented evidence on financial issues including alimony, division of assets and liabilities, medical insurance, life insurance, and counsel fees. Numerous exhibits were entered into evidence. The court has considered all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of fact and issues the following orders.
The parties were married on April 20, 1968. There are no minor children of the marriage. The parties have two grown children. Two other children died in infancy. The court has jurisdiction over the marriage, one party having lived in Connecticut for more than one year prior to the bringing of this action. The parties have not been recipients of public assistance during the period of the marriage.
The plaintiff wife is 54 years old and she is in good health. She received a BA degree in English and Education from the University of Connecticut in 1969. She taught 8th and 9th grade English in public school for two or three years after her graduation from college. However, when her first child, John, died soon after birth in 1972, she did not return to teaching. Instead, she went to work at G. Fox until the birth of their son Patrick, now age 28. After Patrick's birth the parties agreed that the plaintiff would stay home and care for him rather than return to work. In 1977 the parties had another child, Michael, who is now 24. Their fourth child, Kevin, died within a few weeks of birth. The plaintiff was the primary care giver for the children and did not become employed again outside the home until about 1985 when she began working as a tutor in the Glastonbury public schools. She continues to do this job which takes 18 hours per week and pays her gross wages of $183.60 per week, ($144.83 net). The plaintiff does not hold a current teaching CT Page 1934 certificate. She has limited vocational skills and is not currently employable in any capacity which would pay her substantially more than her present job. She has little opportunity for the future acquisition of capital assets and income.
The defendant husband is 56 years old. He has high blood pressure which is treated with medication. He recently had a detached retina which required surgery. It is unclear whether this surgery will be successful. In any event, these two conditions do not restrict the defendant's ability to work in his field. He has a bachelor's degree from the University of Connecticut and had a 30 year career in insurance underwriting at The Hartford Insurance Company. He has retirement income of $1,286 per week ($1,116 net) from The Hartford. He works full-time for a business known as Arbor Benefit Group, a managing general underwriter, in which he is one of three general partners. He is not presently earning any income from this business, although it pays for much of his food and transportation because he does so much business traveling and entertaining. The defendant was actively involved in the raising of the children, particularly when they got into youth sports.
The primary cause for the breakdown of the marriage was the defendant's emotional detachment from his wife and subsequent emotional attachment to a woman who became his business partner. All of this occurred after many years of happy marriage during which the parties raised two fine sons and comforted each other through the tragic loss of two children in infancy. During the time that the children were in college, the defendant began to feel resentful that the plaintiff refused to obtain full-time employment to help ease the financial burden. This resentment began to lead to an emotional distancing from his wife. But, it appears that he kept his feelings to himself for the most part. It is not clear that the plaintiff was even aware of this growing detachment. She was happy with her life and supported her husband's career in all ways. When the defendant retired from The Hartford in April 1998 the parties bought a condominium in Florida and made plans to split their time between Connecticut and Florida. But, the defendant was only 52 years old at the time and he soon grew bored with this life of leisure. After four months he took a new job as a vice president for national accounts with the firm of R.E. Moulton. This job was to last two to three years. During this time his function was to introduce Moulton to his many contacts in the insurance business. This necessitated a great deal of travel. He was very well paid for his efforts: $200,000 per year plus $500 per month car allowance. The plaintiff supported the defendant's return to work, primarily because the defendant would have earned enough in his two or three years to give the parties an even more comfortable retirement.
The defendant voluntarily terminated his employment with R.E. Moulton CT Page 1935 in early May 2000. This was a few days before a hearing to determine pendente lite alimony in this case. On May 23, 2000 the court (Gruendel, J.) issued a written decision awarding the plaintiff pendente lite alimony in the amount $1,500 per week, retroactive to March 17, 2000, and ordering the defendant to pay the plaintiff a $7,500 retainer for her attorney. The court stated:
"To the extent that the husband will have to borrow or invade assets to pay these sums during the time it takes him to obtain employment comparable to that he enjoyed until his abrupt resignation, a future court may take into consideration the fact that he is using material assets to pay his personal obligations when that court determines an equitable distribution of assets at trial."
Subsequently, the defendant drew an additional $40,000 on the home equity loan on the marital home and used it to pay his alimony obligation. In August 2000 he and two other general partners formed the limited partnership known as Arbor Benefit Group. There are limited partners who invested over $1,500,000. The three general partners began work with yearly salaries of $150,000. On January 1, 2001 salaries were reduced to $125,000. On May 1, 2001 they were again reduced to $100,000. Finally, on October 1, 2001 salaries were eliminated. These reductions were caused by sagging revenues as a result of many factors beyond the control of the defendant and his partners. The court is convinced that the defendant and his partners are working hard to try to change the downward spiral of the company. They have cut staff and other expenses and are diligently pursuing new business prospects. For all practical purposes, the company will be forced into bankruptcy by the limited partners unless they can secure a new primary insurer and underwriter by June 30, 2002.
The defendant's employability, vocational skills, and opportunity for the acquisition of capital assets and income are substantially greater than the plaintiffs. Regardless of the ultimate success or failure of Arbor Benefit Group, the defendant has the capacity to earn at the rate of $150,000 per year. He is presently acting reasonably in attempting to keep Arbor afloat. It is reasonable that he is presently not taking any money from Arbor. But, it will soon become unreasonable for him to continue spending his time at this unprofitable activity. Specifically, it is reasonable that he resume earning at his capacity by August 1, 2002.
The marriage took a turn for the worse after the defendant went back to work at R.E. Moulton following his retirement. He began to work closely with a woman he had known many years earlier at The Hartford. They were required to travel together frequently. They socialized together when CT Page 1936 entertaining business contacts. The plaintiff began getting jealous of the time the defendant was spending with this woman. The defendant was not sensitive to the plaintiffs feelings, and began spending even more time away from home. The plaintiff accused the defendant of having an affair. The defendant denied having an affair but did make some unflattering, hurtful comments to the plaintiff which caused her great upset. The court is inclined to believe the defendant that there was no sexual affair prior to separation. But, there is no question that the defendant developed an emotional attachment to this woman while the parties were still living together. This emotional attachment was devastating to the plaintiff after so many years of successful marriage. She sought counseling for anxiety and stress. The defendant moved out of the house on January 1, 2000 and is living with the other woman, who is one of the two other general partners of Arbor Benefit Group.
The parties own a home at 24 Hampshire Drive in Glastonbury where the plaintiff still lives. It has a fair market value of $300,000. There is a home equity mortgage in the amount of $93,387, of which $40,000 was drawn down by the defendant after the court's pendente lite order and used to pay alimony.
The parties also own a condominium at 4621 South Atlantic Avenue, Unit 7306, Ponce Inlet, Florida. It has a fair market value of $300,000. There is no mortgage.
The parties own interests in two separate parcels of land in Marlborough, Connecticut. Each party owns a 25% interest in a lot with a small house located at 76 Finley Hill Road. The other 50% interest is owned by the parties's sons. This property has a value of $80,000. The plaintiff owns a one-third interest in 54 acres of woodlands known as Lot 7, Finley Hill Road. The other two-thirds interest is owned by the parties's two sons. The defendant is very familiar with the property and feels that it has potential for residential subdivision. He would like to work with his sons to develop the property. Based upon his opinion, the court finds that the fair market value of this property is $360,000.
The defendant's pension with The Hartford has a dependant spouse benefit which will permit the plaintiff to receive the pension upon the defendant's death. This benefit does not terminate if the plaintiff remarries.
The parties have various retirement accounts, the balances of which vary daily: 1) 401k with U.S. Trust with an approximate balance of $363,000; 2) IRA with The Hartford with an approximate balance of $13,517.76; 3) IRA with SBM with an approximate balance of $6,734.51; 4) IRA with Fleet Bank with an approximate balance of $3,362; 5) IRA with CT Page 1937 First Federal Savings with an approximate balance of $3,565.02; 6) IRA with First Federal Savings with an approximate balance of $3,169.49.
The parties have their own checking and savings accounts with small fluctuating balances.
There are four term life insurance policies on the defendant's life, all with The Hartford: 1) $590,000 policy which costs $552.89 monthly; 2) $128,000 policy which costs $49.20 monthly; 3) $100,000 policy which costs $106.41 monthly; 4) $100,000 policy which costs $106.41 monthly.
The parties stipulated that there would be a $16,000 pendente lite alimony arrearage if the defendant was not entitled to a modification retroactive to the date of motions for modification filed on September 12, 2000, May 8, 2001 and August 21, 2001. These motions were all based upon changes in the defendant's actual earnings. The plaintiff argues that the court has no power to modify pendente lite alimony at the time of judgment. It is not necessary to decide this legal issue. The pendente lite alimony order was based upon the defendant's earning capacity rather than his actual earnings. There was no change in the defendant's earning capacity during the pendency of this case. Further, the court specifically permitted the defendant to pay the pendente lite order from joint assets. Therefore, the defendant always had the ability to make his payments. For these reasons, the plaintiff will be given a credit for $8,000 in the final distribution of assets.
In determining the division of assets, the court has considered and weighed all of the statutory criteria set forth in Section 46b-81 of the General Statutes. In addition, the court has considered all of the credible evidence as well as the language in the court's pendente lite order of May 23, 2000 quoted earlier. It is fair and equitable that the plaintiff wife should receive 60% of the real estate assets. This can be accomplished by assigning to the plaintiff the 76 Finley Road property ($40,000) and the Glastonbury house ($206,613 equity). The defendant will be assigned the Florida condominium ($300,000) and the 54 acres on Finley Road ($120,000). In order to reach the 60% figure for the plaintiff, the defendant will need to pay the plaintiff the sum of $153,355. In addition, the defendant will be required to pay $8,000 for unpaid pendente lite alimony, plus $10,000 lump sum alimony. This results in a total payment to the plaintiff of $171,355. It is fair and equitable that the defendant be given 60 days to attempt to refinance the Florida condo in order to raise this sum. If this is not possible, the property should be marketed and sold.
With regard to the retirement assets, it is fair and equitable that the parties share these assets equally. This includes an equal sharing of the CT Page 1938 defendant's pension which is currently paying a gross of $1,286 per week.
In connection with alimony, the court has considered all of the credible evidence as well as the criteria set forth in Section 46b-82 of the General Statutes. The plaintiffs financial affidavit shows total weekly expenses of $1,167.61. She has net weekly income of $144.83 and will receive net income of about $550 per week from her 50% share of the defendant's pension. It is fair and equitable that the plaintiff receive weekly alimony of $600 to begin on August 1, 2002. It is also fair and equitable that she receive lump sum alimony of $10,000 to be paid at the refinance or sale of the Florida condominium.
The court issues the following orders:
1. The marriage is dissolved.
2. Within 30 days the defendant shall convey to the plaintiff by quit claim deed all of his right, title, and interest in the property at 76 Finley Hill Road, Marlborough, Connecticut.
3. Within 30 days the plaintiff shall convey to the defendant by quit claim deed all of her right, title, and interest in the 54 acres of property known as "Lot 7" on Finley Hill Road, Marlborough, Connecticut.
4. Within 30 days the defendant shall convey to the plaintiff by quit claim deed all of his right, title, and interest in the marital home located at 24 Hampshire Drive, Glastonbury, Connecticut. The plaintiff shall pay the mortgage on the property and indemnify and hold the defendant harmless from liability for this obligation.
5. Within 60 days the defendant is given the opportunity to pay to the plaintiff the sum of $171,355 by refinancing the Florida condominium at Atlantic Avenue, Ponce Inlet. If he is able to close on such financing within the 60 day period, the plaintiff shall provide him with a quit claim deed of all her right, title, and interest in the property at the closing. If he is unable to pay the $171,355 within the 60 days, the property shall be listed for sale by the parties at an initial listing price of $300,000. The parties shall actively market the property and shall accept any offer within 3% of the listing price. The parties shall reconsider the listing price every 60 days until such time as the property is sold. From the proceeds of the sale shall be paid the real estate commission, usual closing costs, and the sum of $171,355 to the plaintiff The defendant shall retain the balance of the proceeds. The defendant shall have the right to sole occupancy of the condominium until the closing of the sale and shall pay all of the costs of the property CT Page 1939 including taxes, insurance, utilities, maintenance and condo fees.
6. By Qualified Domestic Relations Order the defendant shall transfer to the plaintiff 50% of the defendant's pension which is currently being paid by the defendant's former employer, The Hartford. Also, the plaintiff shall be treated as the defendant's surviving spouse and will receive all survivor benefits. The court will retain jurisdiction to carry out the provisions of this paragraph.
7. The defendant husband shall pay to the plaintiff wife lump sum alimony in the amount of $10,000. This sum is included in the $171,355 figure to be paid as set forth above.
8. Commencing on August 1, 2002 the defendant shall pay to the plaintiff periodic alimony in the amount of $600 per week. This alimony shall terminate on the death of either party or the remarriage of the plaintiff wife.
9. The plaintiff shall retain the personal property in the Glastonbury home. The defendant shall retain the personal property in the Florida condominium.
10. Each party shall retain his or her automobile.
11. Each party shall retain his or her bank accounts free of any claim of the other party. The parties shall equally divide any joint bank accounts.
12. The defendant shall transfer one-half of his U.S. Trust 401k to the plaintiff by assignment or Qualified Domestic Relations Order. The court will retain jurisdiction to carry out the provisions of this paragraph.
13. The parties shall equalize their IRA's by assignment or Qualified Domestic Relations Order. The court shall retain jurisdiction to carry out the provisions of this paragraph.
14. The defendant shall retain his interest in Arbor Benefit Group free and clear of any claim of the plaintiff
15. The defendant shall maintain his existing life insurance policy with The Hartford in the amount of $137,390 and shall name the plaintiff as beneficiary as long as he has an alimony obligation to the plaintiff This coverage is available and affordable at $49.20 per month.
16. Each party will be responsible for the debts shown on his or her financial affidavit and shall indemnify and hold the other party harmless CT Page 1940 from liability for these debts.
17. The parties shall each pay their own attorneys fees.
 ___________________ John W. Pickard, J.